## LUCY CLOW v. CHARLES H. PLUMMER.

*Deed of lands of wife—Identity of parties—Foreign will—Trover—
Tenancy in common—Damages.*

1. Where a wife joins with her husband in a deed of the fee of land of which she is, in whole or part, the sole owner, she conveys all of her interest therein. *Heinmiller v. Hatheway,* 60 Mich. 391.

2. A deed to Harriet N. Andrews was received in evidence, after which the conveyance of the title to the land by her was attempted to be shown by the introduction of a deed from Cyrus Andrews and Harriet Andrews, his wife, who was described in the body of the deed as "Harriet N. Andrews," and in both of which deeds her place of residence was the same; which facts are held sufficient proof of indentity to warrant the court in receiving the latter deed as a link in the chain of title.

3. The failure of the probate judge to record the authenticated copy of a foreign will which has been proved and admitted to probate, as provided by How. Stat. § 5807, is a mere omission of clerical duty on the part of the court, and will not invalidate the proceedings for probating the will.

4. How. Stat. § 5806, which provides for the production of a copy of a foreign will for probate by the "executor, or other person interested in the will," is complied with where the petitioner who produces the will states in the petition that he is authorized to make the same by the representatives of the estate.

5. It was held in *Morley v. Insurance Co.*, 85 Mich. 210, that the defendant must announce that he rests his case before he can insist that the court should rule and pass upon the question of the sufficiency of the evidence of the plaintiff to establish his case; citing *Denman v. Johnston*, 85 Mich. 387; *Hinchman v. Weeks*, Id. 535.

6. A demand by one tenant in common of land upon his co-tenant, who has cut and converted the timber standing on the land, for a settlement of the claim of the demandant, is sufficient to enable him to maintain trover for the value of his interest in the timber.

7. The fact that the timber on lands owned by tenants in common is

liable to destruction by fire will not authorize one tenant to cut, take away, and manufacture the timber.

8. The fact that one tenant in common of land has yet in his possession a portion of the lumber manufactured from logs which he has taken from said land will not prevent his co-tenant from maintaining an action of trover for the wrongful conversion.

Error to Saginaw. (Edget, J.) Argued April 15, 1891. Decided May 8, 1891.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Tarsney & Weadock,* for appellant.

*Markey & Hall,* for plaintiff.

[The points of counsel are stated in the opinion.— REPORTER.]

LONG, J. The plaintiff is a resident of the state of New York, and is the widow of Charles Clow, deceased.

The action is trover, brought in the Saginaw circuit court, to recover from the defendant the value of two-thirds of the pine timber cut and removed by him from lands in Ogemaw county, and manufactured into lumber. Defendant resides in Saginaw county. The verdict and judgment were for the plaintiff in the court below for about $3,200. Defendant brings the case here by writ of error.

The plaintiff claims to be a tenant in common with the defendant of the lands from which the timber was taken. The land was patented to Edmund Heather, May 10, 1867, and by successive conveyances passed to the parties to this action, as plaintiff claims, one-third to defendant, one-third to plaintiff and Ellen J. Keller, and one-third to Julia D. Lewis. Before the commencement of the present suit, Ellen J. Keller and Julia D. Lewis

assigned their right of action to the plaintiff. The plaintiff, on the trial, introduced in evidence the patent to Heather, a warranty deed from Heather to William P. Irwin, and a warranty deed from Irwin and wife to Harriet N. Andrews, of Sodus, Wayne county, N. Y. Plaintiff then offered a warranty deed from Cyrus Andrews, of Sodus, Wayne county, N. Y., and Harriet, his wife, to Chauncey Ives, dated February 14, 1867, purporting to convey the lands in question. The introduction of this deed in evidence was objected to by defendant's counsel for the reasons:

1. That it purports to be a deed of Cyrus Andrews and Harriet, his wife, and does not purport to be the deed, nor to convey the individual interest, of Harriet Andrews, as the only covenant in the deed is that of Cyrus Andrews, as follows: "With all the estate, right, title, and interest therein of the said party of the first part; and the said Cyrus Andrews does hereby covenant," etc.

2. That it is signed and acknowledged by Harriet only, and that the Harriet Andrews, grantor in this deed, is not shown to be the Harriet N. Andrews to whom the land in dispute was conveyed.

The court overruled these objections, and permitted the deed to be introduced in evidence as a link in the chain of plaintiff's title.

Before passing upon the questions raised here, we will notice the claim of title of the respective parties, as they both claim title, if either have title, under the deed of Cyrus and Harriet Andrews, above noted. Chauncey Ives conveyed by deed of warranty to George E. Clow, Charles Clow, and Abram Clow. On December 5, 1875, and after the deed from him to Harriet N. Andrews, William P. Irwin acquired a tax title under tax deed from the Auditor General. William P. Irwin, Abram Clow, and Charles Clow died after the interests in said land had vested in each of them, and each leaving a last will and testament.

At the time of their decease they were all residents of the state of New York, and their several wills were duly admitted to probate in that state. Certified copies of these wills were filed in the probate court for Saginaw and Ogemaw counties, this State, and the three wills were subsequently admitted to probate in those counties. The executrices under the Irwin will conveyed their interest in that estate to Julia D. Lewis, George E. Clow, and Charles Clow. Julia D. Lewis also took, as sole devisee under the will of Abram Clow, all his interest in the land. By the will of Charles Clow, his widow, Lucy Clow, took a life-estate, and the remainder in fee vested in Ellen J. Keller. Subsequently, Julia D. Lewis and Ellen J. Keller assigned their cause of action against the defendant to Lucy Clow, the plaintiff in this suit; thus placing in the plaintiff full interest in the undivided two-thirds interest owned by the representatives of Abram and Charles Clow, deceased. The defendant acquired the sole ownership to the undivided one-third interest owned by George E. Clow. Certain objections were made to the introduction in evidence by the plaintiff of certain of the proceedings for the probate and allowance of the wills of Abram Clow and Charles Clow. These will be noticed after having disposed of the questions raised upon the admissibility in evidence of the deed of Cyrus and Harriet Andrews to Chauncey Ives.

1. The objection that the deed is made and executed by Cyrus Andrews and Harriet, his wife, and does not purport to be the deed, and does not convey the individual interest, of Harriet N. Andrews, has no force. That question was fully settled in *Heinmiller v. Hatheway*, 60 Mich. 394. It was there said:

"When the wife joins with her husband in the conveyance of the fee of land of which she is, in whole or in part, the sole owner, she conveys all of her interest therein,

though she can only be held liable upon her covenants in such deed to the extent of her sole property conveyed."

2. It is claimed that there was no proof of identity of Harriet Andrews, who signed the deed as the wife of Cyrus Andrews, as the same Harriet N. Andrews to whom William P. Irwin conveyed the land. It is said by counsel for the defendant that, before the deed could be offered. in evidence for the purpose of showing the transfer of title, the plaintiff should have introduced proof showing such identity; that, the attention of the party having been called to the fact, and the opportunity given to show such identity if it existed, it raised a strong presumption that the person who signed the deed with Cyrus Andrews as Harriet, his wife, was not the Harriet N. Andrews who took title from William P. Irwin. There might be some force in this objection did it not appear that Harriet N. Andrews, who took title from Irwin, was a resident of Sodus, Wayne county, N. Y., and that Harriet Andrews, who joined with Cyrus Andrews as his wife in the execution of the deed to Chauncey Ives, was also described as a resident of Sodus, Wayne county, N. Y., and was also described in the body of this deed as Harriet N. It is also of some significance that the defendant claims title under and through this same conveyance. If the plaintiff's title is not perfect and complete under this conveyance, then the defendant's title is also an imperfect one; for under defendant's contention the title to the whole property would yet rest in Harriet N. Andrews. We think this was a sufficient identity of the parties, and the court was not in error in admitting the deed in evidence as a link in the chain of title of the parties to this controversy.

3. As before stated, Abram Clow devised all his property, both real and personal, after certain specific bequests, to his daughter Julia D. Lewis; and Charles

Clow devised his property, both real and personal, to his widow, Lucy Clow, during her natural life, and after her death to his daughter Ellen J. Keller; and the rights of action were assigned by Julia D. Lewis and Ellen J. Keller to the plaintiff.

The tax deed to Mr. Irwin having been introduced in evidence, the plaintiff, for the purpose of showing the title in herself, offered in evidence the files of the probate court of Saginaw county in the matter of the estate of William P. Irwin. Counsel for the defendant objected to the introduction of these proceedings, for the reasons that the will—an authenticated copy of which was admitted to probate in that court—had never been recorded, and that the petition for the probate of the will was not made by any one having an interest in the estate of William P. Irwin, and the petitioner was not authorized by law to make the same. How. Stat. §§ 5804–5807, provide as follows:

"SEC. 5804. No will shall be effectual to pass either real or personal estate unless it shall have been duly proved and allowed in the probate court as provided in this chapter, or on appeal, etc.

"SEC. 5805. All wills which shall have been duly proved and allowed in any other of the United States, or in any foreign country or state, according to the laws of such state or country, may be allowed, filed, and recorded in the probate court of any county in which the testator shall have real and personal estate on which such will may operate in the manner mentioned in the following sections.

"SEC. 5806. When a copy of such will, and the probate thereof, duly authenticated, shall be produced by the executor, or other person interested in such will, to the probate court, such court shall appoint a time and place of hearing," etc.

"SEC. 5807. If, on hearing the case, it shall appear to the court that the instrument ought to be allowed in this State as the last will and testament of the deceased, the copy shall be filed and recorded, and the will shall

have the same force and effect as if it had been originally proved and allowed in the same court."

It is claimed that under this statute the recording of the will was a necessary prerequisite to the conveyance of any title to the lands in controversy. The mere fact that the will was not recorded would not be a fatal defect to the proceedings in the probate court. The will, it appears, was duly approved and allowed as provided by the statute, and the authenticated copy deposited and filed in that court. The recording was a mere omission of clerical duty on the part of the court, and could be performed at any time, having relation back to the time of its allowance.

The petition for the probate of the will was made by Edwin N. Hubbell. It is in the usual form of petition for the probate and allowance of foreign wills, and in it the petitioner states and represents that—

. "He is acting in this State as agent of the estate of William P. Irwin, deceased, in looking after its interests and estate here, and that he is authorized by the representatives of said estate to make this petition in their behalf and interest."

The learned counsel for defendant insist that Mr. Hubbell was not authorized to make this petition, as he does not come within the provision of the statute above stated, as he is not "the executor named in the will, nor is he a person interested in such will;" and that therefore the probate court had no jurisdiction to proceed to its allowance and approval. Counsel cite, in support of this proposition, *Besancon v. Brownson,* 39 Mich. 392. But in that case it does not appear that the petition set forth that the petitioner was authorized by the representatives of said estate to make the petition in their behalf, or that Brownson was acting for and in behalf of the estate in which the petition was made. In the present case it

appears affirmatively by the petition that the petitioner was authorized by the representatives of the estate to make the petition for the probate and allowance of the will. We think the statute required no more than this. The executors under the will, or the heirs at law, could have made a petition. They were residents of the state of New York. Apparently, the will was forwarded to this State by the executors and parties interested in the estate for allowance here, for the reason that certain real estate belonging to the deceased was located in Saginaw county. If the statute is to be construed as claimed, it would require the personal intervention of the executors or the heirs at law, and would prohibit them, or either of them, from acting by or through an agent duly appointed for that purpose.

It is said, however, that this construction must be given to the statute, for the reason that no one could appeal from a decision of the probate court in the matter of the allowance of the will except some party aggrieved by such decision, and that it could not be said that the petitioner, Mr. Hubbell, would be aggrieved by whatever disposition the probate court might make of the case. But this is the language used in nearly all of the statutes allowing appeals from inferior courts. In appeals from justices' courts to the circuit court the statute provides that "any party to a judgment rendered by a justice of the peace, conceiving himself aggrieved thereby, may appeal," etc. In these cases it has been the constant practice for the agent and attorneys of parties to make the requisite affidavit for the appeal, setting out in such affidavit that the party to the record feels aggrieved by the judgment or decree of the inferior court. And so it is in appeals in other cases or proceedings in probate court to the circuit court, the party aggrieved may appeal. The court

was not, therefore, in error in admitting in evidence the proceedings for the allowance and approval of this will. Similar questions are raised as to the wills of Abram Clow and Charles Clow. What we have said in reference to the Irwin will applies with equal force to the other two wills.

Several more questions are discussed orally and in the briefs of counsel for defendant, but only one of which do we deem it necessary to notice. It appears that the lands in question were of little or no value, except for the pine timber growing thereon, being about 1,500,000 feet; and that the defendant, without the knowledge or consent of the plaintiff, or the person through whom she claims her undivided two-thirds interest, cut and carried away during the years 1885-86-87 all of the pine timber upon these lands, and removed the same to his mills in Ogemaw and Saginaw counties, and there manufactured the same into lumber. In the year 1888, plaintiff and her assignors sent their agent from the state of New York to this State to examine the land, and procure a purchaser for their two-thirds interest therein. Upon the examination of the land, it was found by the agent of the parties that it had been stripped of every foot of the timber. Plaintiff's agent then called upon defendant, and demanded a settlement of the plaintiff's claim. The defendant admitted that he had cut and removed all of the timber, and had manufactured the same into lumber, and that most of the lumber had been sold and disposed of by him.

Upon the close of the plaintiff's proofs, defendant's counsel made a motion to the court in the nature of a demurrer to the evidence, for the reason and upon the ground that the plaintiff had not shown any conversion of the property by the defendant, and that no demand

had been made upon the defendant for the specific articles of property. The court overruled the motion, and the defendant proceeded with his testimony in the. case. This ruling is assigned as error. It was held in *Morley v. Insurance Co.*, *ante*, 210, that the defendant must announce that he rests. his case, before he can insist that the court should rule and pass upon the question of the sufficiency of the plaintiff's evidence to establish his case; and, until the defendant has so rested, the trial court has the right and discretion to refuse to direct the verdict in favor of the defendant upon the claim that the plaintiff's evidence fails to establish his case. In the case of *Hinchman v. Weeks*, *ante*, 535, the same question was also raised, and the same ruling made. See, also, *Denman v. Johnston*, *ante*, 387.

It does appear that demand was made upon defendant for the settlement of plaintiff's claim before the bringing of this action; and from the record it appears that while the defendant admitted the cutting and removal of the timber by him, and the manufacture into lumber of the same, yet he refused to recognize the plaintiff's right, and refused to settle her demand, although at that time a large part of the lumber had been sold and disposed of.

It is contended, however, that no such conversion was shown of all the common property as entitled the plaintiff to maintain an action of trover. The argument of counsel for the defendant is that it is admitted by the pleadings that the defendant was a tenant in common with the plaintiff; that it is shown by the evidence that the property (the timber converted) was in danger of destruction by fire and other causes; that, no sufficient demand having been made, if the plaintiff had a right of action it was an equitable action for an accounting, and that the defendant should not be charged with wrong-

doing. As we have said, we think all the demand neces-
sary, under the circumstances, to have been made, was
made. The fact that the timber was liable to destruction
by fire was no sufficient reason in law to authorize the
defendant to cut, take away, and manufacture the com-
mon property. One tenant in common has no right over
the property of his co-tenant. The defendant had an
undoubted right to compel the partition of the common
property, but he had no right as co-tenant over the un-
divided interests.

The fact that at the time of the commencement of the
suit defendant yet had in his possession some of the
lumber manufactured from logs taken from this land, and
yet undisposed of, would not prevent the plaintiff from
bringing and maintaining trover. *Aldine Manfg. Co. v.
Barnard,* 84 Mich. 632. Under this view of the case, the
court was not in error in its instructions to the jury
upon the question of damages.[1]

The judgment must be affirmed, with costs.

The other Justices concurred.

---

[1] The court charged that, if the timber was cut and removed by
defendant in the good-faith belief that he was the *sole* owner of
the land in controversy, the measure of damages would be two-
thirds of the stumpage value of such timber; but if not, under
the circumstances of the case, plaintiff could recover two-thirds of
the value of such timber at the place of conversion into lumber.