*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

SHELTON ALI,

Defendant-Appellee.

FOR PUBLICATION
June 4, 2019
9:05 a.m.

No. 341121
Wayne Circuit Court
LC No. 17-006379-01-FC

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

MURRAY, C.J.

The dispositive issue in this appeal is whether a trial court's specific findings of fact in a child protective proceeding conducted under the juvenile code have "cross-over" collateral estoppel effect in a subsequent criminal proceeding against an individual who was a party to the child protective proceeding. Although the Supreme Court strongly discouraged the use of collateral estoppel between these types of proceedings, it did so in dicta, *People v Gates*, 434 Mich 146, 157, 161-162; 452 NW2d 627 (1990), and since then no Michigan court has made a definitive holding on the issue. We do so now, and hold that factual findings made by a court in a child protective proceeding do not have collateral estoppel effect in a subsequent criminal proceeding. As a result, we reverse and remand for further proceedings.

## I. BACKGROUND

Defendant's daughter came to the attention of the Department of Health and Human Services (DHHS) after a Child Protective Services (CPA) referral was made alleging that defendant had sexually assaulted her in a motel room. Proceedings to terminate defendant's parental rights to the child subsequently commenced in the juvenile court. At the termination hearing, defendant's attorney argued that the child "concocted" the allegations against defendant to avoid being sent to boot camp for prior misbehavior. Both the child and her mother testified at the termination hearing. Defendant did not testify, but a letter he had written was admitted as an exhibit.

The trial court found that a preponderance of the evidence supported its exercise of jurisdiction over the child because defendant had engaged in conduct that exceeded the normal

bounds of discipline, but found that petitioner failed to establish by clear and convincing evidence that the child was sexually assaulted. Therefore, the court denied the request to terminate defendant's parental rights. The court then entered a dispositional order finding that the child was not at risk of harm, releasing the child to the custody of her mother, and terminating its jurisdiction over the case.

Approximately three months after the final order was entered in the child protective proceeding, the prosecution charged defendant with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*). The child was the only witness at the preliminary examination, and the district court bound defendant over as charged. In the circuit court,[1] defendant filed a motion to dismiss all criminal charges based on collateral estoppel, arguing that the circuit court's findings in the previous child protective proceedings precluded the state from criminally prosecuting him. The circuit court, properly focusing on *Gates*, nevertheless held that collateral estoppel applied because the same issue was litigated between the same parties in the child protective proceeding. It therefore entered an order dismissing the criminal charges.

## II. COLLATERAL ESTOPPEL

This Court reviews "a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). We review de novo the application of the doctrine of collateral estoppel. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995). "Collateral estoppel is a flexible rule intended to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014). Although in most cases parties seek to apply collateral estoppel in the context of two civil proceedings, our Supreme Court has recognized "the application of collateral estoppel in the civil-to-criminal context." *People v Zitka*, 325 Mich App 38, 44-45; 922 NW2d 696 (2018) (quotation marks and citations omitted). That recognition of what is sometimes referred to as "cross-over" collateral estoppel has not been much more than that; there has never been anything close to a ringing endorsement of the concept by any Michigan court. Instead, the Supreme Court has cautioned *against* its use. See *id*., and the cases cited therein.

*Gates* is the most recent and relevant discussion of the issue from the Supreme Court, and supports the proposition that collateral estoppel should not be applied *in this context* in light of

---

[1] For clarity's sake, we refer to the court that handled the child protective proceeding as the "trial court," and the court handling the criminal proceeding as the "circuit court," even though both are circuit courts.

significant public policy concerns.[2] In *Gates*, 434 Mich at 150-151, the defendant alleged that collateral estoppel barred a criminal prosecution for sexual misconduct involving his three-year-old child, because a child protective proceeding based on the same conduct resulted in a general jury verdict of "no jurisdiction." Thereafter, a circuit court dismissed criminal charges against the defendant on grounds that the jury verdict in probate court determined " 'that the prosecution had not proved a case of sexual abuse by a preponderance of the evidence.' " *Id*. at 154. The Supreme Court, however, held that collateral estoppel did not bar the subsequent criminal prosecution because the verdict of "no jurisdiction" did not "necessarily determine" the guilt or innocence of the defendant, *id*. at 150-151, 158, as there were other possible reasons the jury could have returned its verdict of no jurisdiction, *id*. at 160.

Despite its ruling that collateral estoppel was *factually* inapplicable, the *Gates* Court went on to determine whether *as a policy matter* cross-over collateral estoppel should be applied between child protective proceedings and criminal cases. The Court warned against it, stating that "the purposes of a child protective proceeding and a criminal proceeding are so fundamentally different that application in this instance of collateral estoppel would be contrary to sound public policy." *Gates*, 434 Mich at 161. Specifically, the Court pointed out that "[t]he purpose and focus of a neglect or abuse proceeding in the juvenile division of the probate court is the protection of children," while "the focus of criminal proceedings is on the guilt or innocence of the accused." *Id*. at 161-162. Because of these divergent interests, the Court concluded that cross-over collateral estoppel should not apply between child protective proceedings and criminal proceedings, as permitting its use "would invite the risk that the proper functions of the two proceedings would be compromised." *Id*. at 162.

The *Gates* Court was also concerned with how use of the doctrine would impact the bringing of criminal charges:

> To avoid the effect of collateral estoppel, if it were to be made applicable, a prosecutor would be required to develop criminal charges indicated by the petition and bring them to trial before a determination concerning jurisdiction could be reached in the probate proceeding. However, the burden of proving criminal charges beyond a reasonable doubt, added to problems presented by conflicting procedural and scheduling requirements of the two courts, would make it extremely difficult, and often impossible, for the criminal charges to be brought to trial in circuit court in advance of the jurisdiction determination in probate court.

> Thus, the petitioner or the prosecutor would face an unfortunate choice that is not in the public interest: whether to proceed on the petition in probate court because of concern for the child, or to delay the probate proceeding because

---

[2] *This* question of public policy falls within the province of the courts because collateral estoppel is a common law doctrine. See *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 403 n 9; 578 NW2d 267 (1998), and *Henry v Dow Chem Co*, 473 Mich 63, 83; 701 NW2d 684 (2005). In other words, we are not supplanting legislative policy judgments with ours.

of concern that a verdict of nonjurisdiction would preclude criminal prosecution of the accused. [*Id*. at 163.]

As a result, the Court was "persuaded by public policy considerations that such an election between criminal and child protective proceedings should not be judicially imposed through the application of collateral estoppel." *Id*. Although the Court had already concluded that as a matter of fact collateral estoppel was inapplicable to the case, the *Gates* Court labeled its discussion about the policy implications as a "*conclusion* that collateral estoppel should not apply." *Id*. at 163-164 (emphasis added). Perhaps this phraseology was an attempt to negate any concern that the policy discussion was merely dictum, but given its previous conclusions regarding the inapplicability of the doctrine under the facts, any additional reasoning to reject its application seems to have been unnecessary. See *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014) ("Dictum is a judicial comment that is not necessary to the decision in the case.").

But even if it is dictum, and we think it is, it is *persuasive* dictum given that (1) it is from the Supreme Court, and (2) it is thorough, definitive, and convincing. See *Mount Pleasant Pub Sch v Mich AFSCME Council 25*, 302 Mich App 600, 610 n 2; 840 NW2d 750 (2013). The concerns outlined in *Gates* are just as significant and applicable today, and those concerns counsel against giving factual findings made by a court in a child protective proceeding "cross-over" collateral estoppel effect in a criminal proceeding. Hence, under the rationale in *Gates*, it is improper for a court in a criminal case to give preclusive effect to findings made in a child protective proceeding.

Courts from other jurisdictions have come to the same conclusion, and most of them rely at least in part on *Gates*.[3] For example, in *People v Moreno*, 319 Ill App 3d 445, 452-453; 744 NE2d 906 (2001), the Illinois Court of Appeals held, for many of the same sound policy reasons articulated in *Gates*, that the trial court in a criminal proceeding was precluded from giving collateral estoppel effect to the facts found by the court in an abuse and neglect proceeding:

> In the present case, important public policy reasons exist to prevent the application of collateral estoppel and its application would be inappropriate. In the juvenile proceeding, the ultimate litigated issue was whether the minor children of defendant were abused due to defendant's involvement with the injuries of G.M.; in the subsequent criminal proceeding, the ultimate litigated issue will be whether the defendant is criminally culpable for the injuries to G.M. In the juvenile proceeding, the State's purpose is protection of defendant's minor children; in the criminal proceeding, the State's purpose is discovering if defendant injured G.M. and punishing her if found guilty. The differences of purpose and goal in the civil and criminal procedures are "very real." A criminal

---

[3] *Gates*, 434 Mich at 163, looked to at least one sister state jurisdiction in its public policy discussion. Given the dearth of Michigan law on the issue, we think it prudent to consider how other states address the issue in a similar context. *Outdoor Sys Advertising, Inc v Korth*, 238 Mich App 664, 669-670; 607 NW2d 729 (1999).

trial is the exclusive forum for determining guilt or innocence, and of the public's right to have criminal culpability assessed at a trial. [Citations omitted.]

These same policy concerns were echoed by the Vermont Supreme Court in *State v Nutbrown-Covey*, 204 Vt 363, 370-371; 2017 VT 26; 169 A3d 216 (2017), where the court emphasized the significantly different purposes of the two proceedings:

> [T]he kinds of proceedings at issue here—a CHINS [Child In Need of Care or Supervision] proceeding in the family division and a criminal case—require the courts to consider and apply different rules of law. See Restatement (Second) of Judgments § 27 cmt. c (explaining that determining whether issue was necessary to first judgment requires court to consider whether any new evidence involves application of different rule of law). A criminal case is concerned with a defendant's conduct in some specified instance and therefore requires the State to prove particular elements of a crime at the time and place alleged, while a CHINS case is concerned with the wellbeing of the child in question and therefore considers the course of the parent-child relationship. Put differently, a criminal case seeks to identify any misconduct on the part of a defendant; a CHINS case seeks to identify how to best protect the child, regardless of whether or not the child's parent has engaged in misconduct. [Citation omitted.]

The resources typically utilized by the state in these different proceedings have also been recognized as a reason not to apply collateral estoppel between them. Because of the disparate issues, the level of proof, the more adversarial nature of criminal proceedings, timing issues, and other like concerns, in many states more resources are devoted to criminal prosecution than to child protective proceedings. Thus, as the Washington Court of Appeals concluded in *State v Cleveland*, 58 Wash App 634, 643-644; 794 P2d 546 (1990), it makes little sense to bind the prosecution to factual findings made in a civil proceeding where, more likely than not, fewer resources and less time were devoted to the proofs:

> As noted above, we find overall considerations of public policy are determinative of the question before us. Dependency proceedings are often attended with a sense of urgency, are held as promptly as reasonably possible, and the entire focus of the proceeding is the welfare of the child. The focus being more narrow than in a typical felony trial, the State normally does not need, nor does it perform, the extensive preparation typically required for felony trials.

> Furthermore, the prosecutor uses many more resources in developing a felony prosecution than those available and used in the typical dependency hearing. Dependency is decided by a judge, while felony trials are usually tried to a jury. In addition, if the State was faced with application of the doctrine of collateral estoppel to findings in dependency proceedings, there could well be a reluctance to conduct dependency proceedings in cases where one or more of the same issues would arise in subsequent criminal prosecutions. While the welfare of minor children is undeniably important, we are influenced by the desirability of not impeding enforcement of the criminal law when no overriding consideration requires it.

See also *Gregory v Kentucky*, 610 SW2d 598, 600 (Ky, 1980), and *Criner v State*, 138 So 3d 557, 559 (Fla App, 2014) ("We are persuaded by public policy considerations that such an election between criminal and child-protective proceedings should not be judicially imposed through the application of collateral estoppel.").

In concluding that collateral estoppel should not be applied in these circumstances, we are not ignoring the undeniable truth that fundamental constitutional rights are at stake in both proceedings. See *Crosby-Garbotz v Fell*, 246 Ariz 54, ___; 434 P3d 143, 147-148 (2019). Although varying individual constitutional interests are at stake in both proceedings, it nevertheless remains true that these proceedings are fundamentally different: one is civil, the other criminal; they both serve different purposes and implicate different state interests (enforcement of the criminal laws and the safety and security of the child); each involves different burdens of proof[4] and different procedural requirements;[5] and criminal proceedings tend to be more adversarial in nature. And, as we have pointed out, it is these same differences and concerns that drove the *Gates* Court to express its disagreement with applying cross-over collateral estoppel between child protective proceedings and criminal proceedings. Additionally, *Gates* recognized that if cross-over collateral estoppel applied in these circumstances, it would encourage the prosecution to race to complete the criminal proceedings to avoid being bound by the findings in a child protective proceeding. *Gates*, 434 Mich at 163.

We also recognize that some courts, like the Arizona Supreme Court in *Crosby-Garbotz*, have taken a more flexible approach to deciding whether cross-over collateral estoppel applies in these circumstances. But like the other state courts we have referenced,[6] we believe these policy concerns are over-arching, are not fact dependent, and apply with equal force in these "cross-over" circumstances between child protective proceedings and criminal proceedings.

Because collateral estoppel should not have been applied by the circuit court to the findings made by the trial court in the child protective proceedings, the circuit court abused its discretion by granting defendant's motion to dismiss the criminal charges.

---

[4] Compare MCR 3.977(E)(3), stating that clear and convincing evidence is required to terminate parental rights, with *People v Wright*, 477 Mich 1121, 1122; 730 NW2d 720 (2007), recognizing the constitutionally-required beyond-a-reasonable-doubt standard.

[5] Child protective proceedings involving the termination of parental rights are not decided by juries, MCR 3.977(A)(3), whereas criminal cases typically are, see *People v Allen*, 466 Mich 86, 90; 643 NW2d 227 (2002) (noting the state and federal constitutional rights to a jury trial in criminal proceedings). Juries are permitted in the adjudicative phase of child protective proceedings, but there, the burden of proof is preponderance of the evidence. See *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Also, unlike criminal trials, in most child protective proceedings the rules of evidence do not apply. MCR 3.901(A)(3).

[6] And the persuasive dissent in *Crosby-Garbotz*, which cited to *Gates*. See *Crosby-Garbotz*, 246 Ariz at ___; 434 P3d at 151 (TIMMER, J., dissenting).

The circuit court's order is reversed, and this matter is remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel